# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# PANAMA CITY DIVISION

**BENJAMIN ELLIS FREEDLAND,**

    **Petitioner,**

**v.**　　　　　　　　　　　　　　　　　**Case No. 5:21cv056-TKW/MAF**

**W.E. MACKELBURG, WARDEN,**

    **Respondent.**

_____/

## REPORT AND RECOMMENDATION

On or about March 8, 2021, Benjamin Ellis Freedland, a federal prisoner proceeding pro se, filed petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. ECF No. 1. Petitioner asserts the Bureau of Prisons (BOP) has denied him placement in a residential re-entry program. *Id*.

On May 10, 2021, Respondent filed an answer, with exhibits. ECF No. 26. Petitioner Freedland has not filed a reply, although he was given the opportunity to do so. *See* ECF No. 28; *see also* ECF Nos. 3, 19, 25.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B). After careful consideration, the undersigned concludes that this § 2241 petition should be denied.

## Background

Petitioner Freedland is incarcerated at FCI-Marianna, serving a sentence imposed by the U.S. District Court for the Eastern District of Pennsylvania. *See* ECF No. 1 at 2; www.bop.gov/inmateloc. His current release date is January 9, 2022. *See* www.bop.gov/inmateloc.

Freedland has filed this § 2241 petition asserting the BOP improperly denied his release to a Residential Re-entry Center (RRC) or "halfway house." ECF No. 1 at 2; *see* ECF No. 26 at 2. In particular, he asserts "[t]he BOP has denied, outright, any RRC Placement for unfounded reasons and based on a meritless threat." ECF No. 1 at 3. He further asserts:

> Petitioner was referred for RRC/halfway house in August of 2020 but was denied outright based on a "unique safety threat to [him] and the public" (see Exhibit A) [BOP Informal Resolution]. As a result he was "not recommended for participation in community based programs, including Residential Reentry housing." (see Exhibit A). Petitioner was transferred to FCI-Marianna on 10-20-20 and was informed by his unit team that he would not be considered for RRC placement. By this time he'd already filed the BP-9 (institutional grievance form) drawing a response from Warden Withers at his previous institution which notated that "upon a relocation threat assessment by USPO" a decision would be made in relation to his RRC Placement. Petitioner immediately filed a BP-10 Regional Grievance #1049855-R1 which was extended for response until February 8, 2021. As of February 16, 2021, Petitioner has not received a response and has elevated his claim to the Central Office level.

ECF No. 1 at 5-6. Petitioner explains that he was in the "Witness Security Program" and he "left the program voluntarily entering general population on 11-7-17 because the threat which initially qualified him" for that program "never materialized." *Id*. at 6. Petitioner further asserts:

> Petitioner's United States Probation Officer has confirmed and coordinated with his prison's case management relieving the responsibility of BOP's care for his safety in a document he signed in December of 2020 paving the way for his consideration for RRC placement and leaving it in the hands of Warden Mecklenberg at FCI-Marianna. On 1-13-21, despite assurances from United states Probation and Petitioner's WITSEC sponsors that no threat existed to his safety, he was again denied RRC Placement outright due to a phantom "treat to [his] safety."

*Id*. Petitioner asks this Court to act "so that he can be considered for RRC Placement as he so deserves" and he indicates he "can present documents from all aforementioned parties and provide the results of his administrative remedies." *Id*. He further "prays that this Court consider that he has been awaiting a medically necessary procedure since 11-27-19 which is indefinitely delated while he is incarcerated; however, upon release to RRC he will be operated on within weeks." *Id*. He attaches as an exhibit the Response to Request for Administrative Remedy Attempt at Informal Resolution, dated September 28, 2020, which states:

Case No. 5:21cv056-TKW/MAF

> A review into this matter revealed issues surrounding your current offense conduct which creates a unique safety and security threat to you and the public. Based on these threats, it is recommended you not be referred for participation in community based programs, including Residential Reentry Center housing.

ECF No. 1 at 7.

Respondent filed an answer, with exhibits, asserting the petition should be denied because Freedland did not exhaust his administrative remedies and because the BOP did not abuse its discretion in denying his RRC placement request. ECF No. 26. Regarding exhaustion, Respondent asserts that, although Freedland "properly filed an administrative remedy at the institution level (the "BP-9" stage), he failed to follow through on the next step, which would have been to appeal the denial to the Southeast Regional Office" (the "BP-10" stage), and instead "he appealed directly to the Central Office level (the "BP-11" stage)." *Id*. at 4. In addition, Respondent asserts "the BOP alone has sole discretion to make the determination of where Petitioner will serve his sentence, and the Court cannot grant the relief he seeks" as "[t]here is no evidence in this case to suggest the BOP abused its discretion." *Id*. at 5-6.

## Analysis

The Judiciary Act of 1789 granted federal courts the power to issue the writ of habeas corpus. *See* United States v. Hayman, 342 U.S. 205 (1952). The habeas remedy is now codified in 28 U.S.C. § 2241, subsection (c)(3) of which provides that the writ of habeas corpus shall not extend to a prisoner unless the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." As noted in Hayman, prisoners must bring habeas corpus applications in the district of confinement. 342 U.S. at 213. Because courts with federal prisons in their jurisdictional boundaries became inundated with habeas petitions, and because the materials, witnesses, and other evidence which had a significant bearing on the determination of the legality of a sentence were generally located in the district where sentence was imposed rather than where the prisoner was confined, in 1948 Congress enacted § 2255 of Title 28. *See id.* at 212-14, 218; *see also* Wofford v. Scott, 177 F.3d 1236, 1239 (11th Cir. 1999).

The language of § 2255 suggests, and the Eleventh Circuit has expressly concluded, that this statute channels challenges to the legality of the imposition of a sentence, while leaving § 2241 available to challenge the

continuation or execution of an initially valid confinement. See <u>McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.</u>, 851 F.3d 1076, 1081 (11th Cir. 2017); <u>Antonelli v. Warden, U.S.P. Atlanta</u>, 542 F.3d 1348, 1351-52 (11th Cir. 2008); <u>United States v. Jordan</u>, 915 F.2d 622, 629 (11th Cir. 1990) (explaining § 2255 is primary method of collateral attack on federally imposed sentence). Thus, § 2241 provides an avenue for challenges to matters such as the administration of sentences or parole, prison disciplinary actions, prison transfers, and certain types of detention. See <u>Antonelli</u>, 542 F.3d at 1352 (petition challenging decision of federal Parole Commission is properly brought pursuant to § 2241); <u>Thomas v. Crosby</u>, 371 F.3d 782, 810 (11th Cir. 2004) (petition challenging pre-trial detention is properly brought pursuant to § 2241); <u>Bishop v. Reno</u>, 210 F.3d 1295, 1304 n.14 (11th Cir. 2000) (petition challenging Bureau of Prisons' administration of service credits, including calculation, awarding, and withholding, involves execution rather than imposition of sentence, and thus is matter for habeas corpus).

In his § 2241 petition, Freedland essentially challenges the execution of his sentence. ECF No. 1. Specifically, he challenges the BOP's decision not to transfer him to an RRC. *Id*.; *see* ECF No. 26 at 2.

The U.S. Attorney General, acting through the BOP, administers a federal defendant's sentence. 18 U.S.C. § 3621(b); <u>United States v. Wilson</u>, 503 U.S. 329, 335 (1992); <u>Rodriguez v. Lamar</u>, 60 F.3d 745, 747 (11th Cir. 1995). After a petitioner exhausts administrative remedies with the BOP, the district court may review the constitutionality of the BOP's decision and statutory construction. *See* <u>Rodriguez</u>, 60 F.3d at 747. "[I]f congressional purpose is clear, then interpreting courts and administrative agencies 'must give effect to the unambiguously expressed intent of Congress.'" *Id.* (quoting <u>Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837, 842-43 (1984)). If the statute is silent or ambiguous, the court must defer to the agency's reasonable interpretation unless the interpretation is "'arbitrary, capricious, or manifestly contrary to the statute.'" *Id*. (quoting <u>Chevron</u>, 467 U.S. at 844).

Respondent asserts that although Freedland began the administrative remedy process, he did not properly proceed through that process and, thus, has not exhausted his administrative remedies regarding his request for a transfer to an RRC. ECF No. 26 at 2-4. In support, Respondent attaches the declaration of Jesi L. Mendez, the Executive Assistant/Camp

Administrator at FCI Marianna. *Id*. Ex. 1 (ECF No. 26-1). As part of this position, Mendez reviews administrative remedy submissions filed by inmates and has access to BOP records. *Id*. at 1-2. Mendez states, "A review of Petitioner's administrative remedy history reveals that Petitioner has not exhausted his administrative remedies regarding his claims related to his request for placement at an RRC." *Id*. at 4. Mendez explains that Petitioner filed Administrative Remedy #1068053-F1 on February 2, 2021, challenging the decision to not refer him for RRC placement. *Id*. The Warden responded on February 17, 2021, explaining that Petitioner was denied such placement "due to safety and security concerns" involving his specific case. *Id*. at 5. The Warden provided information as to how Petitioner could obtain a copy of the RRC denial and also provided appeal instructions, indicating he could appeal to the Regional Director within 20 days. *Id*.; *see* ECF No. 26-6 (Warden's Response dated 2/17/2021). Mendez states, "Petitioner's SENTRY records show he did not properly appeal to the Regional Director"; rather, "he attempted to appeal the denial decision directly with the BOP's Central Office," which rejected the appeal because he did not attach a copy of the BP-9 or the Warden's final decision

and he had appealed to the incorrect level. ECF No. 26-1 at 5. Mendez thus concludes that "review of Petitioner's SENTRY records related to administrative remedies revealed that Petitioner failed to properly appeal the denial of RRC placement and, as such, failed to properly exhaust his available administrative remedies specific to this issue." <u>Id</u>.

The Eleventh Circuit Court of Appeals has held, in <u>Santiago-Lugo v. Warden</u>, 785 F.3d 467 (11th Cir. 2015), that a § 2241 petitioner's failure to exhaust administrative remedies is not a jurisdictional defect, overruling its earlier decision in <u>Gonzalez v. United States</u>, 959 F.2d 211 (11th Cir. 1992). The court explained that exhaustion of administrative remains a requirement, "it's just not a jurisdictional one." <u>Santiago-Lugo</u>, 785 F.3d at 475.

> What its non-jurisdictional nature means is that a court need not inquire into exhaustion on its own. A court has the discretion to accept or reject a concession from the respondent that administrative remedies have been exhausted. And because exhaustion is non-jurisdictional, even when the defense has been preserved and asserted by the respondent throughout the proceeding, a court may skip over the exhaustion issue if it is easier to deny (not grant, of course, but deny) the petition on the merits without reaching the exhaustion question.

<u>Id</u>. at 475 (citations omitted).

Although Freedland did not file a reply to Respondent's answer,

Case No. 5:21cv056-TKW/MAF

Freedland has submitted a motion requesting this Court recognize he exhausted his administrative remedies. *See* ECF No. 21. By order on April 28, 2021, this Court denied that motion, explaining that Respondent's answer would address the exhaustion issue and Freedland would have an opportunity to reply. ECF No. 25. Freedland's motion alleged "he has properly exhausted the B.O.P's administrative remedy process" by filing a BP-8, a BP-9, and a BP-10. ECF No. 21 at 2-5.

Even if he had properly exhausted his administrative remedies, Petitioner Freedland's challenge fails on the merits as he has not shown the BOP abused its discretion in not allowing his transfer to an RRC. Pursuant to 18 U.S.C. § 3624(c)(1), the BOP "shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community" and "[s]uch conditions may include a community correctional facility." The statute further provides that "nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621." 18 U.S.C. § 3624(c)(4). The BOP considers prisoners for pre-release confinement

under § 3624(c) "in a manner consistent with 18 U.S.C. [§] 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community." 28 C.F.R. § 570.22.

As referenced above, the BOP has the authority, pursuant to statute, to designate the place of confinement for a federal prisoner. 18 U.S.C. § 3621(b). See McKune v. Lile, 546 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."); *see also, e.g.*, Burg v. Nicklin, No. EP-19-CV-24-FM, 2019 WL 369153, *3 (W.D. Tex. Jan. 29, 2019) (explaining, in order denying petition for writ of mandamus that requested court direct respondent to immediately release inmate to home detention, "§ 3621(b) gives the BOP the authority and discretion to designate a prisoner's place of confinement" and, further, "[t]he Supreme Court has consistently held that a prisoner has no constitutional right to be confined in a particular place"). Indeed, "[t]he Attorney General – and by delegation – the BOP – has the exclusive authority and *discretion* to designate the place of an inmate's confinement." Burg, 2019 WL 369153 at *3; *see, e.g.*, Moore v. United States Att'y Gen., 473 F.2d 1375, 1376 (5th Cir. 1973) ("A person convicted of a crime against

the United States and sentenced to confinement is committed by statute to the custody of the Attorney General at a place to be designated solely by the Attorney General."); Ledesma v. United States, 445 F.2d 1323, 1324 (5th Cir. 1971).  In Program Statement 7310.04, the BOP set forth guidelines for referring prisoners to RRCs and, specifically, "[i]t directs the staff to 'make recommendations for [RRC] placements based on assessments of inmate needs for services, public safety, and the necessity of the Bureau to manage its inmate population responsibly." Klatch v. Rathman, No. 1:13cv1452-WMA, 2014 WL 537021, at *2 (N.D. Ala. Feb. 10, 2014); *see* www.bop.gov/policy/progstat/7310_004.pdf.

In this case, Respondent has attached the Declaration of Lexanne Bozeman, Case Management Coordinator, FCI Marianna, explaining the "recommendation to the Warden of FCI Marianna to deny Petitioner's RRC placement request out of an abundance of caution and in an effort to prevent any harm coming to Petitioner, RRC Staff, or the public at large."  ECF No. 26-7 at 3.  Bozeman explains that, as part of her position, she serves "as FCI Marianna's administrator of the Central Inmate Monitoring program and . . . the institution's coordinator for Witness Security ("WITSEC") cases," as well as "the institution's liaison between the Case Managers and the

Community Corrections Office regarding community resources available for inmates upon release." *Id*. at 2. She further states:

> 3. In my role, I also coordinate with agency staff at all levels regarding recommendations and considerations implicated in FCI Marianna's decision whether to approve or disapprove of an inmate's request to be allowed to serve the remainder of his incarcerative sentence in a Residential Reentry Center ("RRC"), also referred to commonly as a "halfway house."
>
> 4. I am generally aware of the allegations set forth by federal inmate Benjamin Freedland, Federal Register Number 72119-066 [hereinafter "Petitioner"] related to his RRC denial. I am also aware of Petitioner's transfer history within the BOP and the reason he was not approved for RRC placement.
>
> 5. Petitioner arrived at FCI Marianna on October 20, 2020, from the United States Penitentiary in Yazoo City, Mississippi. Prior to his arrival at FCI Marianna, his case manager at his previous institution received a recommendation from BOP's Central Office that FCI Marianna staff not approve Petitioner for RRC placement due to his *former* status as a Witness Security ("WITSEC")-status inmate and the continued risk that Petitioner's cooperation with the government and his previous participation in the agency's WITSEC program created a unique threat.
>
> 6. Moreover, as described by the responsible Central Office staff member for the benefit of Petitioner's former case manager, the unique threat was to both Petitioner's "safety and security" and the safety and security of the public. Therefore, a decision by FCI Marianna to discount the Central Office recommendations that were made specific to Petitioner's case would have meant approving Petitioner's request and potentially putting him, RRC staff, and members of the public in danger.
>
> 7. Petitioner – contrary to the assertion in his habeas petition – did not voluntarily leave the WITSEC program. Instead, on November 8, 2017, the BOP's Chief of the Inmate Monitoring

> Section in Central Office sent a memorandum to the BOP's Designation and Sentence Computation Center to notify staff there that Petitioner had been "removed" from the WITSEC program "due to his violation of Bureau of Prisons and WSP rules."
>
> 8. One example of a possible threat to a former WITSEC inmate like Petitioner would include the party(ies) against whom an inmate testified discovering the inmate's removal from a secure BOP institution to the community-situated and significantly less secure halfway house, with the aggrieved party(ies) then attempting to effect revenge against the inmate by force – force which could also potentially affect RRC staff, other RRC residents, or members of the public in the vicinity of any action.
>
> 9. Referral of an inmate for RRC placement is a decision left to the discretion of BOP staff who, pursuant to the Second Chance Act of 2007, consider each individual inmate's unique case and circumstances in arriving at a decision regarding whether to recommend and ultimately place an inmate in a halfway house. The BOP policy governing RRC placement considerations is Program Statement 7310.04, a copy of which can be downloaded from the agency's public website by going here: www.bop.gov/policy/progstat/7310_004.pdf.
>
> 10. As of result of the recommendations of the responsible Central Office staff – and in light of my experience, training, corrections-based knowledge and judgment, and applicable BOP policies and guidance – I made a recommendation to the Warden of FCI Marianna to deny Petitioner's RRC placement request out of an abundance of caution and in an effort to prevent any harm coming to Petitioner, RRC staff, or the public at large. The warden agreed with my recommendation, and Petitioner was subsequently notified of the decision to deny his request for RRC placement.

*Id*. at 2-4.

Based on the foregoing, Petitioner Freedland has not shown the BOP

abused its discretion in denying his request for a transfer to an RRC. Accordingly, this § 2241 petition should be denied.

## Conclusion

It is therefore respectfully **RECOMMENDED** that the petition for writ of habeas corpus filed under 28 U.S.C. § 2241 (ECF No. 1) be **DENIED.**

**IN CHAMBERS** at Tallahassee, Florida, on July 23, 2021.

<u>S/ Martin A. Fitzpatrick</u>
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2).** <u>**Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control**</u>**. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. R. 3-1; 28 U.S.C. § 636.**